IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JESSYCA JERDON PATE, ]
 ]
      Plaintiff, ]
 ]
v. ] No. 2:11-CV-
 ]
CLAUDE MANIS individually and ]
d/b/a THE BURGER BAR, THE ]
BURGER BAR, and ERIC RICE, ]
 ]
      Defendants. ]

## COMPLAINT

Plaintiff Jessyca Jerdon Pate files her claims for sexual harassment, sex discrimination, hostile work environment, and retaliation against the defendants and avers:

1. The federal question jurisdiction provisions of 29 U.S.C. §1331 empower this Court to adjudicate the plaintiff's federal employment discrimination and retaliation claims. The plaintiff's sex discrimination, sexual harassment, hostile work environment, and retaliation claims are premised upon the provisions of *Title VII* codified at *42 U.S.C. §2000e-2 and §2000e-3,* and *§2000e-5* and the provisions of *42 U.S.C. §1981a.*

1

2. Plaintiff Jessica Jerdon Pate is a white female, 22-years-of-age. She now resides in Sullivan County, Tennessee. At all times pertinent to her complaint, Ms. Pate 20-years-of-age was employed by The Burger Bar in Rogersville, Tennessee while it was owned and operated by Mr. Eric Rice.

3. Defendant The Burger Bar restaurant is currently owned by defendant Claude Manis. Defendant Manis purchased the restaurant from former owner defendant Eric Rice while the sex discrimination, sexual harassment, and retaliation charges filed by the plaintiff were being investigated by the EEOC. Defendant Manis purchased and has been operating The Burger Bar restaurant business at the same U.S. Highway 66 location in Rogersville, Tennessee with knowledge of the plaintiff's employment discrimination claims against the restaurant. Defendants Manis and The Burger Bar are successor employers of the plaintiff for purposes of Title VII liability. The Burger Bar employs more than 15 individuals. Claude Manis is being served as the owner and chief executive officer of The Burger Bar at the restaurant's address, 4120 Highway 66 South, Rogersville, Tennessee 37857-6922.

4. Defendant Eric Rice is a resident of Hawkins County, Tennessee. He was the owner, operator, and alter ego of The Burger Bar restaurant, during the period of time during which the acts of sexual harassment, hostile work environment, discrimination, and retaliatory discharge described in this Complaint

were committed. Defendant Rice was also the chief managerial agent of The Burger Bar and was the chief perpetrator of the sexual harassment, hostile work environment, and retaliation described in this Complaint. Defendant Rice was the owner/operator of The Burger Bar when the plaintiff filed her EEOC discrimination charges against the restaurant on March 29, 2010. Defendant Rice is being served by certified return receipt requested mail at his current residence located in Rogersville, Tennessee and at his place of business in Morristown, Tennessee.

5. Plaintiff Pate interviewed with defendant Rice for the server position at The Burger Bar on February 24, 2010. She went by her maiden name Jerdon and was engaged to be married to Matthew Pate at the time. Defendant Rice told the plaintiff that he was breaking up with his wife and was "really happy" he had met her. Rice told the plaintiff that he hoped to get to know her better and wished she would give him a "chance" to be with her. Rice gave the plaintiff his phone number on a business card and asked her to text him later. The plaintiff was taken aback and left. Later that evening Rice texted the plaintiff to tell her how beautiful she was and that he couldn't wait to see her again. The plaintiff understood that she would be scheduled to start work the next week.

6. Early the next morning, February 25, Rice texted the plaintiff and begged her to come to work so he could see her. The plaintiff had a seven-month old baby and needed the job. She reported to work. Rice began to touch the

3

plaintiff and put his hands on her waist and back when he talked with her. The plaintiff became uncomfortable and told Rice that he was married and shouldn't act like that. Rice protested that he and his wife did not love each other and he really wanted to get to know her better.

7. During the plaintiff's day shift, the restaurant's dishwasher/cook began making unwelcome sexually-oriented comments to the plaintiff. His sexually harassing comments included asking the plaintiff how much it would cost for him to see her naked and what color underwear the plaintiff was wearing. The cook commented on the size of the plaintiff's breasts and rear-end. The cook offered to please the plaintiff in any way possible. The cook also "grunted" when the plaintiff would walk by and told her that she was "driving him crazy." The cook's actions and comments were offensive and unwelcome to the plaintiff.

8. After the plaintiff had left work and returned home, Rice texted her that she was "beautiful," and that he liked the way she dressed. Rice told the plaintiff he would take her and her child out to Applebee's or "somewhere really nice." The plaintiff again responded that Rice was married, that what he was doing was wrong, and that he needed to stop. Rice insisted that he "wanted a chance" with her and that he was getting a divorce. Rices sexual advances were offensive and unwelcome to the plaintiff.

9. The next day, Friday, February 26, Rice continued to insist that

4

he would take the plaintiff out to dinner. He said he was divorcing his wife to be with the plaintiff. During the afternoon, Rice produced a yellow ring from the restaurant's gumball machine, put his arm around the plaintiff, and insisted that she take the ring. Rice announced to a restaurant employee in the vicinity that he was going to marry the plaintiff.

10. On Saturday, February 27, 2010, Rice whispered in the plaintiff's ear that he had told his wife he wanted a divorce. The plaintiff was shocked and tried to keep her distance from Rice the rest of the day. The cook continued to make unwelcome comments about the plaintiff's body and how hot she made him. Later in the day, defendant Rice gave the plaintiff an envelop and asked her not to tell anyone. The plaintiff opened the envelop in the ladies' room and found Rice's ETSU class ring and his love note to her. The plaintiff tried to give the ring back to Rice, but he refused. As the plaintiff was preparing to leave work, Rice insisted that there was nothing going on between him and his wife and that he wanted to be with the plaintiff. Ms. Pate said "no" and left. Rice's sexual predations made the plaintiff anxious and nervous.

11. On Sunday, February 28, Rice texted the plaintiff to come to The Burger Bar and help him with the paperwork. The plaintiff did not respond. She became upset and told her parents and her boyfriend what had been happening to her at work. Ms. Pate showed them Rice's ETSU class ring, love note, and text

5

phone messages.

12. Stressed and disturbed by Rice's continued unwelcome and persistent sexual pursuit and harassment, the plaintiff telephoned the restaurant and said she was staying with her ill son on Monday, March 1, 2010. Rice texted the plaintiff and insisted that he take her and her child on an out-of-town trip he had planned for Wednesday, March 3. When the plaintiff's fiancé sent flowers to the plaintiff at the restaurant later in the day, Rice texted the plaintiff that he was angry that the flowers were there. The plaintiff asked a friend to pick up the flowers.

13. The plaintiff returned to work on Tuesday since Rice was out of town. The cook continued to make unwelcome sexually oriented remarks to the plaintiff about how she looked and how sexually "experienced" he was. The cook asked the plaintiff for nude photos and asked if he could take nude photos of her. Ms. Pate replied "no." The plaintiff saw Rice return to the restaurant as she was leaving. Rice texted the plaintiff that evening that he had missed her and wished she had gone out of town with him.

14. Plaintiff Pate avers that the actions and comments of the defendant's owner and the cook adversely impacted her ability to perform her job, caused her emotional stress and anxiety, and were subjectively and objectively hostile, harassing, and demeaning, and constituted an illegal hostile work environment. The plaintiff's objections to Rice and the cook went unheeded.

6

Defendant Rice and The Burger Bar fostered, encouraged, and enabled the hostile work environment.

15. The plaintiff went to work on Wednesday, March 3, worried that she would continue to be sexually harassed all day long. The cook continued to sexually harass her. The plaintiff told the restaurant manager Gabby Churchill that she had to go home. When she arrived home, the plaintiff explained to her parents and fiancé that the sexual harassment was continuing and stated that she did not want to return to the restaurant.

16. Matthew Pate went to see Rice's wife, Lea, at the Rogersville City School where she worked and told her about Eric Rice's outrageous sexual harassment. Lea Rice insisted to Pate that the plaintiff leave the restaurant and not return. Lea Rice telephoned the restaurant and told manager Gabby Churchill she was coming to the restaurant to talk to her husband and did not want to see the plaintiff there. Plaintiff Pate was telling Gabby Churchill, the restaurant manager, about the sexual harassment when Churchill received Lea Rice's telephone call. Manager Churchill told the plaintiff that Lea Rice had talked with her fiancé and was on the way to the restaurant to talk with her husband. Manager Churchill told the plaintiff that Lea Rice did not want her at the restaurant when she got there.

17. Matthew Pate came to the restaurant. He and the plaintiff's father entered defendant Rice's private office and complained to Rice about his

sexual harassment. As the plaintiff was leaving the restaurant, she told manager Churchill to call her and tell her when she could return to work after the sexual harassment stopped. Churchill told the plaintiff she would call her. Churchill told plaintiff Pate that she was a "great employee" and that Churchill did not want to lose her. Churchill promised that the plaintiff would not lose her job for complaining about Eric Rice's sexual harassment.

18. Contrary to her promise, Manager Churchill never called the plaintiff to tell her when to report back to work. The defendant restaurant did not return the plaintiff's telephone calls. The plaintiff justifiably concluded that The Burger Bar and the Rice had discharged her.

19. The plaintiff, accompanied by her sister, returned to the restaurant on Saturday morning March 6, 2010, to pick up her only pay check. The servers turned a cold shoulder to the plaintiff. Manager Churchill told the plaintiff to fill out a W-2 form so she could receive her only paycheck and then ignored her.

20. The plaintiff avers that the defendants Rice and The Burger Bar sexually harassed her, maintained a sexually hostile work environment, discriminated against her because of her sex, and retaliatorily discharged her for complaining about the sexual harassment. The defendants violated the provisions of Title VII of the 1964 Civil Rights Act, codified at *42 U.S.C. §2000e-2* and *§2000e-3*. The defendants' harassment, discrimination, and retaliation were

deliberate, intentional, malicious, and in reckless disregard of the plaintiff's federally protected rights. The plaintiff is entitled to compensatory damages and punitive damages from the defendants.

21. The plaintiff avers that the defendants' continuing pattern of pervasive sexual harassment interfered significantly with her ability to perform her work for the defendants. The plaintiff avers that the constant sexual harassment constituted an objectively and subjectively hostile work environment. The plaintiff repeatedly objected to the sexual harassment and complained to the perpetrator and owner/operator of the restaurant and implored him to stop the harassment. The defendants are not entitled to assert any *Ellerth/Faragher* affirmative defense.

22. The plaintiff suffered emotional and mental distress as a result of the defendants' harassment and retaliation. She lost wages. Her enjoyment of life has been diminished and her earning capacity has been impaired.

23. The plaintiff filed administrative sex discrimination and retaliation charges against The Burger Bar with the EEOC, has received her right-to-sue letter, and has exhausted her administrative remedies. Defendant Claude Manis, the current owner of The Burger Bar, was aware of the pendency of the plaintiff's EEOC charges and purchased the restaurant with full knowledge of the plaintiff's Title VII claims against the business. Defendant Manis is currently the alter ego of the Burger Bar and is liable as the successor employer for all Title VII and *42*

*U.S.C. §1981a* relief available to the plaintiff.

WHEREFORE, THE PLAINTIFF DEMANDS:

1. Judgment against the defendants for all compensatory damages allowed by Title VII and *42 U.S.C. §1981a*.

2. Judgment against the defendants for all punitive damages allowed by Title VII and *42 U.S.C. §1981a*.

3. An award of lost wages.

4. An award of front pay.

5. A jury to try the plaintiff's claims.

6. An award of attorney's fees as the prevailing party.

s/ C. R. DeVault, Jr.
CHARLTON R. DEVAULT, JR.
TN BPR #000428
102 Broad Street
Kingsport, Tennessee
(423) 246-3601

ATTORNEY FOR THE PLAINTIFF